May it please the court, I am Sandy Irwin and I'm speaking on behalf of petitioner appellant Hoang Nguyen. I would like to reserve two minutes of my time for rebuttal. Hoang Nguyen's trial counsel Jamie Harman failed to obtain a translation of Mr. Nguyen's police interrogation which had taken place entirely in Vietnamese. This was actually a double failure because first Harman did not obtain any translation of the interrogation prior to making strategic decisions about trial or even prior to trial beginning and second Harman failed to obtain an independent translation of the interrogation once she received detective trans translation and should have noticed material discrepancies between the transcript and the summary in trans police report. The state court labeled this failure a deficiency therefore the only issue that remains for this court to decide is whether the state's prejudice determination was unreasonable and it was. State the straight prejudice determination was unreasonable because the court required the court was required under Strickland to look beyond the mere impact of the jury hearing mistranslation and consider the ways in which Harman's failure harmed Mr. Nguyen at trial by altering the evidence that was presented. This included looking at the implied vouching for Mr. Tran, detective Tran, by the failure to challenge the translation that he had provided. Inadequately preparing for cross-examination of Jane and Lynn because counsel did not receive any translation of her client's statement until after Jane and Lynn. Is there anything in the record that suggests that Harman chose her defense strategy based on the mistranslation? The fact that she chose to not use a fabrication defense and to only go with a defense of misidentification suggests that she did base it upon the police report in which there was one significant mistranslation in response to a question from detective Tran. But the police report isn't the issue of the translation, right? It's the police interview that needed to be translated. Correct. And counsel did not have the entire transcript. But didn't she form her strategy before she received any translation of the whole interview? Yes, she did. And then how did the translation of the interview being wrong affect her strategy? Because she didn't even have it when she formed her strategy probably. And that's why I catch this as a double failure. Her first failure was not having any translation at all of what her client had said. This is the biggest failure actually because Strickland indicates that the Sixth Amendment imposes upon counsel a duty to investigate. And Ronpilla says that it is incumbent upon defense counsel to make reasonable efforts to obtain information that they How could she have known that the translation was inaccurate? Her client didn't even say anything. He didn't spot the error either, did he? Unfortunately, Mr. Tran didn't hear, excuse me, Mr. Nguyen did not hear the translation that was provided until the day before he testified when it was read aloud in court. And remember that he speaks Vietnamese and had an interpreter with him. So what he actually heard was an interpreter interpreting for him trans translation of the statement that he had given the police nine to ten months before. Did he say, I didn't say that? He did not, but he wasn't asked whether he had said that. Well, presumably he's sitting next to his counsel. If he heard himself quoted as saying something that isn't what he said, wouldn't you expect him to say something to his lawyer? And I apologize for my voice today. Say something to his lawyer about I didn't say that. And there's no indication that that's what happened. There is no indication on the record that Mr. Nguyen was aware of the mistranslations himself. That's true. But the fact of the matter is that he did not make the statement that he thought that Well, let's assume for a moment that's true. His statement is something that he really wouldn't have a basis to know. The issue is whether, I mean, whether the victim was lying about having been assaulted by someone. The alternative between fabrication, that is she wasn't assaulted and made it up, or misidentification, which is she was assaulted at age seven, but wasn't clear on who did it. He's not in a position to know. He might know whether he did something, but he wouldn't know whether she had been assaulted by somebody else. So he's not really competent to testify as to what he's saying. What difference did it make? I think that's the bigger failure here on Harmon's part, is that she made all of her strategic decisions about trial, including her preparation for her defense, including her preparation for cross-examining the state's witnesses, including her preparation of her own client to take the stand, without any translation in her hand of what her client had said. And having the translation, how would that change anything? I mean, I look at it, and the district judge observed in his footnote, you know, if you're making that decision, it's a hard sell to say this victim is fabricating it at age 17 or 18 at that point, as compared to arguing that, well, I'm not saying she's a liar, but she was seven at the time the episode took place, and so it's easy to understand misidentification. If I'm a defense lawyer, that seems to me to be a pretty easy call. So why should we expect her to make the difficult call? I think the State concedes in its brief that a fabrication defense was the most logical response to a molestation allegation with only one witness. That's on page 57 of the Pelley's brief, excuse me. Well, it's pretty apparent that's not the district court's attitude. The failure, though, infected the trial, even if Harmon had not changed her strategy. She may have made the same decision after she had received a translation, but the fact of the matter is that she could not have made any reasonable trial strategy decisions without having completed a reasonable investigation, which included understanding what her client had said before when interrogated by the police. This was especially important. Don't you have to show that the jury would have been more receptive to another defense in order to show harm? Don't you have to show that there's something in the record that indicates that? If that were the only problem with the failure to obtain a translation. But as I said, there were other problems. Harmon did not receive the copy of the translation that Detective Tran produced until after trial had already begun and after Jane and Lynn had already testified. She could not have cross-examined them about the allegations of fabrication that were raised in Mr. Nguyen's interrogation. On eight separate occasions, he indicated that Jane or Lynn or someone else may have had reason to frame him. That still would have helped counsel to prepare for cross-examination because that does support a misidentification defense. But wasn't there enough incriminating evidence in the correctly translated part that a misidentification defense was going to be difficult? I mean, it seems that there was contact between this victim and your client of some sexual nature. And he admitted that. He admitted that there was casual contact, but not necessarily sexual contact. I think it's actually Detective Tran and the State who uses the term sexual contact repeatedly or that there was any or even that there was the sexual curiosity. That word was never used by Mr. Nguyen, and he didn't suggest that this was sexual contact. He suggested that there was incidental. But that's a matter of interpretation. He admitted contact that others could view as sexual, even if he was saying it wasn't. And it seems that once he's done that, it's pretty hard to change to have a different theory. He's just sort of in a bad situation no matter what happens at that point. He is in a bad situation. This, again, is why he was prejudiced by his counsel's failure to obtain a translation of the entire interrogation before she prepared, because she would have known that 13 separate times before he ever came up with the story, Detective Tran had asked him whether any incidental, accidental, or even, you know, purposeful contact had been made by Jane with his penis in a variety of different situations. And he continued to follow up each of those with this idea that, I don't really believe that this happened, that Jane's story is accurate. And if you give me something to go back, I can go back and have another conversation with her and clear this all up. Mr. Nguyen was under the impression that if he gave them the right story, that he would be able to end the interrogation and even the entire interview and investigation into these allegations. He was looking to restart his life, and he had never been before been alleged to have done anything similar to this. This came out of the blue for him, and I think he was floored by these accusations. Would you like to reserve the remainder of your time? May it please the Court, David Baskine for Respondent. I just have a few main points I want to make. As far as the performance of Attorney Harmon, the State Court did not find that performance was deficient. Really? I mean, I was surprised by your argument. I look at the record and it seems to me that it did. I look at ER 47. I initially thought the same thing, and I looked at it again. And what the State Court actually says is that appellant raises deficiencies. It didn't say it found that they were actually deficient. I understand that that's a little ambiguous. I thought it was worth making the argument. I think it's worth making the point that counsel had no reason to get another translation. There's nothing I mean, the State Court goes on from this, noticing the deficiencies to immediately a prejudice analysis. So how, what? I mean, you can't read it as saying that they reached a conclusion that the performance was good. They certainly don't say that. So why do they go on to a prejudice analysis unless they're at the very least assuming that there was a violation? I think it's just so much easier to go to prejudice. And I think it's reasonable to infer that's what they did. That's what the Court did. So what would our standard of review become? And you've made an affirmative argument there was not deficient performance. And that wouldn't qualify for epta deference because the State Court didn't make. So it seems to me, actually, the as if we would read the State's Court's decision as being a conclusion that there was deficient performance, you're almost suggesting that the State Court made an unreasonable determination. And if that's the case, then epta deference vanishes. So I look down that road and I wonder where it leads to. Well, I think if the State Court found that was deficient, then we wouldn't have an argument to make. We would just accept that. We wouldn't be disagreeing with the State Court. Well, but by making that argument, do you open the door to giving up epta deference altogether? If so, you wouldn't want to go there. Just on that first prong on performance. And I understand that it's ambiguous, but I feel like it's a very common tactic that courts use. You know, we can spend 30 pages analyzing. The deficiency wasn't the selection of strategy. The deficiency was the failure to obtain a translation. Correct. And you can argue that it wasn't necessary to do so, but there's not an affirmative reason I can think of where she would want to not have the translation. And so it's not like which path to go down in defense. It's was it insufficient to fail to go down that road at least a little bit. And at this point, I suggest that maybe you spend your time on prejudice because that's the one where the wind might be at your back. Right. Okay. Well, I will take your advice. As far as prejudice goes, there really is nothing in the independent translation that made a fabrication defense more plausible than the chosen identity defense. I mean, this is solely appellant's words. It doesn't prove anything about the victim, Jane. It doesn't prove what she was thinking. So it doesn't, there's nothing there that helps. Well, he was in a position to know her. Yes. I mean, he did for at least some period of time live there, had a relationship with her. It's sort of a side door character or reputation for veracity type testimony. And so it has potentially an impact, I think, on a trier of fact to have the person who's being accused as the defendant say, well, I don't think she's lying and rule out the truth. Which your own brief acknowledges is a plausible defense that no doubt Harman knew about and gave thought to. So why isn't this a translation problem that might have encouraged Attorney Harman to go solely for the misidentification and not make at least some kind of fabrication argument that might have ultimately been successful? Well, I mean, when appellant said, I don't think she's lying, what did he mean? Did he mean, I think she's telling the truth? Absolutely not. He meant, I don't know what's going on here. Is she lying? Is she mistaken? So the fabrication defense, if bolstered by whatever else they could come up with, with regard to his relationship with the mother, that sounds a lot more like lying. And so a statement, I don't think she's lying, kind of weighs affirmatively against a fabrication defense. Except that, you know, when this was all said and done and Detective Tran was like, okay, I understand what you're saying. He's saying, I think what you're really telling me is she's lying. So, I mean, he conveyed that. He said literally like five or six different things. I don't know where this is coming from. It could be, you know, her mother. It could be a mistake. It could be dreams. It could be, you know, she saw me having sex. I don't know. But he's not really saying, I don't think she's lying. He's just saying, I'm guessing I'm putting out these things. And whether he said, I don't think she's lying or she is lying. I mean, it didn't really change the tenor of what he was saying, which was, I don't know why she's saying this, but it's not true. And that comes through loud and clear. And that was the message that Tran got. And I don't think the new translation changes anything. And I don't think it would have changed anything because, you know, again, this was a credibility contest. Absolutely. No question about it. And the jury believed Jane. There's nothing in the independent translation that was more favorable. Wasn't the prosecutor's argument, the closing argument, didn't they put a lot of emphasis on that statement? I don't think she made it up, don't you? I mean, it was a pretty big deal, no? Well, my recollection is that he did refer to it and say, you know, this sort of summarizes my argument, which is that she didn't make it up. I don't think he really said this is an omission and this is the end of the case because he admitted it. The prosecutor did not use it that way. The prosecutor used it as like, you know, by the way, this came out and that really captures the truth of this trial, which is you have all this evidence that Jane is reliable. She's she doesn't have any reason to lie. She's a young girl. She's going through all this trouble and going through the prosecution. You know, she has this letter that's corroborated by her mother and stepfather, you know, and on the other hand, you have a palant who has the letter. They didn't have the letter, right? They don't have the letter, but they have testimony about it. So either, you know, Lynn and Brian are lying about the letter and it never existed. And it's three people with a conspiracy to frame him. But that would be the fabrication defense, right? That that, you know, so I don't think that, you know, I don't think that was a viable I don't think that was a better defense. And I think Harmon made a reasonable choice saying we're going to go with identity because it's a lot easier to prove or posit as reasonable doubt that, you know, she was seven. She went through a traumatic experience. She might be mistaken about who it was. There's men coming in and out. That's a lot easier than to say, well, this this young girl is just flat out lying. So I think it was a completely reasonable decision. That's all I have. Thank you, counsel. Thank you. I just like to make two quick points in regards to Judge Edelman's question about whether the prosecutor used the mistranslation that was provided to him extensively in his closing argument. He did. He made arguments. He prefaced all of his arguments by saying that Mr. Nguyen had said creepy and crazy things. And he used the specific mistranslation of I don't think she made it up by saying you're darn right because you're the one who did it. He used it extensively in closing argument. The other point I'd like to make is that this isn't only about making a different trial strategy. This is about Harmon's failure to obtain any trial decision. So I could have asked this question earlier, but I'll ask it now. So the this it seems like you're depending on a rule that you need to obtain an independent translation of the defendant's statement. And I don't think you have a Supreme Court case that says that or even a Ninth Circuit case that says that yet. So I'm wondering, even if we assume we're outside AEDPA, whether we have a Teague problem. I don't think that the only issue here is that there wasn't an independent translation, is that she didn't obtain any translation before she made her decisions about trial strategy. Do we have a case that's already in existence that says in every instance, even if there's a police report and your client isn't objecting to it, that you have to get an independent translation of an interview? No, but again, Strickland indicates that the Sixth Amendment imposes upon trial trial counsel a duty to do adequate investigation. And Rompila says that that includes making reasonable efforts to obtain information that you know that the trial counsel knows the prosecutor is probably going to rely upon. That was evident even from the police report. That police report was five pages. The first page and a half of that summarized Detective Tran's efforts, a 40-hours investigation. The last three and a half pages, three-plus pages, was devoted to the statement that was made by Mr. Nguyen that took 51 minutes. This was clearly the strongest piece of evidence that they had before them. Even Detective Tran testifies on the stand that all of the allegations made by Jane Doe that he had taken note of were very general. So they were relying upon Mr. Nguyen's statements to corroborate Jane's story. And that would not have been the case if there had been any translation obtained by counsel. And that's the failure here. I don't think there has to be any new rules made. The prevailing professional norms required counsel to make reasonable efforts to promptly obtain the information contained within the police file. We're over your time. Thank you so much. We have your argument. Thank you both sides for the helpful arguments. The case is submitted. Our next case on calendar is United States v. Sanchez, 17-10519, 17-10528. And 18-10113. Each side will have 15 minutes.
judges: Clifton, Friedland, Adelman